UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                        )
J-WAY SOUTHERN, INC.,                   )
                                        )
                Plaintiff,              )
                                        )        Civil Action
        v.                              )        No. 19-12423-PBS
                                        )
UNITED STATES,                          )
                                        )
                Defendant.              )
_____)

**MEMORANDUM AND ORDER**

May 14, 2020

Saris, D.J.

The United States Army Corps of Engineers terminated its contract with Plaintiff J-Way Southern, Inc. for dredging in Menemsha Harbor, Martha's Vineyard. J-Way alleges that the Government improperly terminated and breached the contract, and seeks monetary damages.

The Government moves to dismiss or transfer, arguing, among other things, that exclusive jurisdiction lies in the United States Court of Federal Claims. Plaintiff responds that the contract is a maritime contract over which federal district courts properly have jurisdiction.

After hearing, the Court **DENIES** the motion to dismiss for lack of subject matter jurisdiction. Because this jurisdictional

1

issue is a matter of first impression, the Court certifies this
Order for interlocutory appeal pursuant to 28 U.S.C. 1292(b) and
defers ruling on the Government's remaining arguments for
dismissal for at least 60 days.

## FACTUAL BACKGROUND

The following facts come from the complaint and submissions
and are largely undisputed except where stated.

### I.   The Contract

J-Way entered into a contract with the Army Corps of
Engineers ("USACE") in June 2015. The contract was for the
dredging of "[a]pproximately 62,000 cubic yards of sandy
sediment" from Menemsha Harbor in Martha's Vineyard,
Massachusetts to be disposed of on Lobsterville Beach through a
temporary pipeline. Docket No. 1 ¶ 14. The bid solicitation
identified the "Project Location" as "Menemsha Creek . . .
[which] serves host to a U.S. Coast Guard station and is used by
recreational craft, a small fishing fleet, and transient boats."
Docket No. 1-1 at 91. The solicitation's "General Description of
the Work" stated that "[t]he work of this project will consist
of the maintenance dredging of shoaled areas within the existing
Federal Navigation Channel . . . and the upland disposal of the
dredged material." Id.

J-Way was to provide the labor, supervision, materials, and
equipment necessary to complete the work. USACE agreed to pay a

price per cubic yard of dredged material, plus additional
compensation for mobilization and demobilization. "The contract
price per cubic yard" of dredging material included "all cost of
removal[,] disposal . . . and grading of the dredging material
at the disposal site," Lobsterville Beach. Id. at 103.

The contract contained terms regarding the timing and
safety of the work, as well as general terms related to federal
construction contracts. It also required J-Way to avoid
obstructing traffic in navigable waterways.

The contract indicated that certain portions of work would
occur on land, such as the hauling and staging of equipment, the
laying of pipeline routes, and the disposal and grading of
dredged material on Lobsterville Beach. The contract also
included provisions related to the protection of local wildlife
and vegetation.

The contract required J-Way to complete the work by January
31, 2016. J-Way did not complete the work within that time.

## II.  **First Termination for Default**

In May 2016, USACE issued a first Termination Notice,
finding J-Way in default.

In August 2016, J-Way filed an administrative claim under
the Contract Disputes Act ("CDA") with USACE's Contracting
Officer ("CO"). J-Way argued the delay was excusable and that
the contract deadline should be extended to the following

dredging season. The CO reviewed the claim and in August 2016 rescinded the default. In September 2016, USACE and J-Way executed an Agreement to Proceed, which modified the contract to allow J-Way to complete the work by January 16, 2017.

### III. **Second Termination for Default**

J-Way recommenced dredging but again experienced delays. USACE issued a Determination and Findings on March 3, 2017, stating that J-Way's failure to perform the work was not excusable.

USACE then issued a second Termination Notice for Default on March 6, 2017. USACE then made a demand upon J-Way's performance bond to complete the work.

In June 2017, USACE and J-Way's surety, U.S. Specialty Insurance ("Surety"), executed a Takeover Agreement. Pursuant to the Takeover Agreement, the Surety procured a new contractor that timely completed the work. USACE did not assess liquidated damages or excess reprocurement costs against the new contractor, though J-Way alleges that the Surety paid for procurement costs and other expenses to complete the contract. USACE made its final payment to the Surety in January 2019, at which point the Surety released all claims against the United States.

IV.   **Current Proceedings**

In November 2018, the Surety brought suit against J-Way in the District Court the District of Massachusetts. <u>See</u> Complaint, <u>U.S. Specialty Ins. Co. v. J-Way Southern, Inc.</u>, No. 18-cv-12464 (ECF 1). The Surety sought indemnity pursuant to its contract with J-Way.

In May 2019, J-Way submitted a second administrative claim under the CDA to USACE's contracting officer, arguing that the March 2017 default termination was unlawful because the delay arose from "unforeseeable causes" such as "unusually severe weather, unforeseeable mechanical breakdowns due to equipment manufacturer defects, USACE's own acts and omissions, and a previously-scheduled fishing tournament that prevented dredging and was unknown to J-Way when it bid on and was awarded the contracts." Docket No. 1 ¶ 4. The CO did not reconsider the Termination for Default and took no action on the claim.

In November 2019, J-Way brough the present action in U.S. District Court. The action alleges improper default termination, breach of contract, and breach of implied covenant of good faith and fair dealing, both on behalf of J-Way and its Surety, U.S. Specialty Insurance. J-Way asserts admiralty jurisdiction.

## STANDARD OF REVIEW

Here, the United States moves for dismissal or transfer for lack of subject matter jurisdiction under Rule 12(b)(1). In the

alternative, the Government argues J-Way's claims should be dismissed for failure to state a claim under Rule 12(b)(6).

A Rule 12(b)(1) motion is used to dismiss complaints for lack of subject matter jurisdiction. See Fed. R. Civ. P. 12(b)(1). "[W]hen a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) involves factual questions," the court's standard of review depends on "whether the relevant facts, which would determine the court's jurisdiction, also implicate elements of the plaintiff's cause of action." Torres-Negron v. J & N Records, LLC, 504 F.3d 151, 162-63 (1st Cir. 2007) (citation omitted).

Where "the jurisdictional issue and substantive claims are so intertwined" that "resolution of the jurisdictional question is dependent on factual issues going to the merits," the court applies a summary judgment standard. Id. at 163 (quoting Autery v. United States, 424 F.3d 944, 956 (9th Cir. 2005)). By contrast, "if the facts relevant to the jurisdictional inquiry are not intertwined with the merits of the plaintiff's claim," then the court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Id. (quoting Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990)). Here, the jurisdictional issue and the substantive claims are not intertwined, so the Court may weigh the evidence as to subject matter jurisdiction.

## DISCUSSION

The Government argues that this case must be dismissed or transferred because the U.S. Court of Federal Claims has exclusive jurisdiction over disputes regarding government construction contracts. J-Way contends that the contract at issue is a maritime contract, such that the federal district court has jurisdiction.

## I.    Legal Standard

The Court of Federal Claims generally has exclusive jurisdiction over contract claims against the United States in excess of $10,000. 28 U.S.C. § 1491(a)(1); see also 28 U.S.C. 1346 (a)(2) (authorizing the Court of Federal Claims and the federal district courts to exercise concurrent jurisdiction for claims not exceeding $10,000). However, the Contract Disputes Act ("CDA") preserves admiralty jurisdiction in the federal district courts for suits against the United States "arising out of maritime contracts." 41 U.S.C. § 7102(d)[1]; see also 46 U.S.C. § 30906 (requiring civil actions in admiralty against the United

---

[1] The relevant provision reads in full:

> (d) Maritime contracts. – Appeals under section 7107(a) of this title and actions brought under sections 7104(b) and 7107(b) to (f) of this title, arising out of maritime contracts, are governed by [the Suits in Admiralty Act] or [the Public Vessels Act], as applicable, to the extent that those [Acts] are not inconsistent with this chapter.

41 U.S.C. § 7102(d).

States to be brought in federal district court); Thrustmaster of
Texas, Inc. v. United States, 59 Fed. Cl. 672, 673-74 (2004)
(recognizing that federal district courts have exclusive
jurisdiction to hear CDA claims regarding maritime contracts).

Maritime jurisdiction over a contract "depends upon the
nature and character of the contract," including whether the
contract has "reference to maritime service or maritime
transactions." Norfolk S. Ry. Co. v. Kirby, 543 U.S. 14, 24
(2004) (citations and alterations omitted). Courts ask whether
the "principal objective of [the] contract is maritime
commerce." Id. at 25.

The Supreme Court has recognized that maritime commerce is
"often inseparable from some land-based obligations." Id. The
Court therefore required a "conceptual rather than spatial"
approach. Id. at 23; see also id. at 27 ("If a [contract's] sea
components are insubstantial, then the [contract] is not a
maritime contract.").

## II.  **Analysis**

As the Government emphasizes, the Court of Federal Claims
and its predecessor the United States Claims Court have
exercised jurisdiction over government dredging contract
disputes since 1857. See N. Am. Landscaping, Constr. & Dredge
Co., Inc. v. United States, 142 Fed. Cl. 281, 283 (2019)
(resolving dredging contract dispute brought by contractor

against United States); <u>see also</u> <u>Jay Cashman, Inc. v. United</u>
<u>States</u>, 88 Fed. Cl. 297, 299 (2009) (hearing dispute regarding
contract to "deepen the navigational channels in [a] port");
<u>Weeks Dredging & Contracting, Inc. v. United States</u>, 13 Cl. Ct.
193 (1987), <u>aff'd</u>, 861 F.2d 728 (Fed. Cir. 1988); <u>Stuyvesant</u>
<u>Dredging Co. v. United States</u>, 11 Cl. Ct. 853, <u>aff'd</u>, 834 F.2d
1576 (Fed. Cir. 1987); <u>Ferris v. United States</u>, 28 Ct. Cl. 332,
348 (1893); <u>Pigeon v. United States</u>, 27 Ct. Cl. 167, 172 (1892);
<u>Minge v. United States</u>, 1857 WL 4162 (Ct. Cl. Feb. 2, 1857). In
addition, the Supreme Court has decided multiple appeals from
the Court of Claims regarding disputes between the Government
and a dredging company over a contract to dredge a navigable
waterway. <u>See, e.g.,</u> <u>Sutton v. United States</u>, 256 U.S. 575, 577
(1921); <u>Bowers Hydraulic Dredging Co. v. United States</u>, 211 U.S.
176, 187 (1908). The Government vehemently argues that this
court would upend over 150 years of practice if it were to hold
that the District Court has jurisdiction here.

While history is important in discerning legislative intent
when two jurisdictional provisions intersect, no court has
squarely considered whether a government dredging contract is a
maritime contract. The Supreme Court, the Federal Circuit, and
the Court of Federal Claims have all held that they are "not
bound by a prior exercise of jurisdiction in a case where it was
not questioned and it was passed sub silentio." <u>See</u> <u>United</u>

States v. L.A. Tucker Truck Lines, Inc., 344 U.S. 33, 38 (1952); Huston v. United States, 956 F.2d 259, 261 (Fed. Cir. 1992); Red River Holdings, LLC v. United States, 87 Fed. Cl. 768, 796 n.33 (2009). The Court of Federal Claims' exercise of jurisdiction over government dredging contract disputes has never been analyzed.

In the absence of controlling precedent, the Court turns to the Supreme Court's "principal objective" test to determine whether the contract at issue is a maritime contract. See Kirby, 543 U.S. at 25. The undisputed purpose of the contract was to dredge a navigable waterway and then deposit sand on a beach. See Docket No. 1-1 at 91 ("The work of this project will consist of the maintenance dredging of shoaled areas within the existing Federal Navigation Channel . . . ."). Courts have held that dredging a navigable waterway is traditionally a maritime activity and that such a dredging contract facilitates maritime commerce, giving rise to maritime jurisdiction. See Misener Marine Const., Inc. v. Norfolk Dredging Co., 594 F.3d 832, 837 (11th Cir. 2010) (holding that a dredging contract between private parties was a maritime contract because the "primary objective of the contract . . . was dredging a navigable waterway," work which "had a direct effect on maritime services and commerce.") In some circumstances, a contract to nourish beaches with dredged sand and to protect them from further

erosion are deemed not be maritime contracts. See <u>Village of</u>
<u>Bald Head Island v. U.S. Army Corps of Eng'rs</u>, 714 F.3d 186, 196
(4th Cir. 2013) (stating, though, that the "principal purpose"
of a separate USACE dredging contract "was to protect maritime
commerce by ensuring that vessels could continue to access the
port"). <u>But</u> <u>cf.</u> <u>R. Maloblocki & Assoc., Inc. v. Metro. Sanitary</u>
<u>Dist. of Greater Chi.</u>, 369 F.2d 483, 485 (7th Cir. 1966) (in a
pre-<u>Kirby</u> case where the removal of silt was done mostly outside
the navigable part of the waterway, declining to find admiralty
jurisdiction where "the essential purpose of the [dredging]
contract was in aid of flood control").

The Government argues that the principal objective of the
contract here was construction, rather than maritime commerce.
<u>See</u> Docket No. 16 at 21 (citing federal regulations describing
dredging as a type of construction). However, that regulatory
description does not determine the jurisdictional question
where, as here, the primary objective of the "construction" was
to assist maritime commerce.

At the hearing on this motion, the Government stated that
approximately one-quarter to one-third of the contract period
was allocated for grading the beach, "large portions" of the
period was to be spent on mobilization and demobilization, and a
"significant period" was to be spent constructing a temporary
land-borne pipeline. The Government also argued that much of the

equipment required to complete the contract was not vessel-borne. However, the Government provided no legal support as to why these considerations should outweigh the contract's plain language and compensation scheme. In this case, the contract provisions demonstrate that the primary purpose of the dredging was to facilitate maritime commerce.

The Government fairly points out that the contract had additional objectives to protect local wildlife and to restore Lobsterville Beach, but it has not produced any evidence from which this Court can find that those objectives were the primary purpose of the contract. Rather, the plain language of the contract indicates that J-Way was paid based on the amount of sediment dredged. The contract provided no separate renumeration for depositing the sediment or grading the beach. Cf. Kirby, 542 U.S. at 25 (acknowledging that maritime commerce is "often inseparable from some land-based obligations"). Furthermore, the Government conceded at hearing that less time was allocated to grading the beach than to dredging the sediment. Substantial portions of the contract were dedicated to improving the navigability of a waterway. Jurisdiction over this contract dispute properly lies in the federal district court.

## III. **28 U.S.C. § 1292(b)**

A district judge may certify an order for interlocutory appeal if she is "of the opinion that [the] order involves a

controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Such certification "should be used sparingly and only in exceptional circumstances, and where the proposed intermediate appeal presents one or more difficult and pivotal questions of law not settled by controlling authority." Caraballo-Seda v. Municipality of Hormigueros, 395 F.3d 7, 9 (1st Cir. 2005) (citation omitted).

Here, each of the factors necessary to certify an order for interlocutory appeal is met. First, this Order involves a controlling question of law. The parties agree that no court appears to have decided whether a government dredging contract dispute is subject to maritime jurisdiction.

Second, there is substantial ground for difference of opinion. The Court of Federal Claims and the Federal Circuit have adjudicated government dredging contract disputes for over 150 years, without considering the underlying question of subject-matter jurisdiction. Such history matters in understanding the intersection between the two statutory grounds of jurisdiction. See Amell v. United States, 384 U.S. 158, 163-166 (1966). Meanwhile, the "primary objective" test set by the Supreme Court counsels in favor of finding maritime jurisdiction in this case. See Kirby, 543 U.S. at 24-2. In private

13

litigation, the Eleventh Circuit found maritime jurisdiction in similar circumstances. Misener, 594 F.3d at 837.

Furthermore, appellate affirmation that this dredging contract is subject to maritime jurisdiction may have far-reaching consequences for other government contracts typically litigated in the Court of Federal Claims. See Docket No. 16 at 15 n.8 & 25 (explaining that "the Army Corps regularly spends $600 million per year on maintenance dredging contracts" and that disputes regarding those contracts "have been resolved at specialty government contract appeal boards or in the U.S. Court of Federal Claims" since the 1800s); Docket No. 24 at 4 ("Army Corps construction projects often involve a navigable waterway, such as the construction and maintenance of locks, dams, wharves, breakwaters, and other waterway improvements.").

Third, immediate appeal of this Order may materially advance the ultimate termination of this litigation. This Order determines that the federal district court properly has subject-matter jurisdiction over this suit. Interlocutory appeal would ensure that a possible appellate holding to the contrary would occur before time-consuming and expensive litigation on the merits of J-Way's CDA and contract claims in district court. Many of the legal issues raised have typically been handled by the Federal Court of Claims, which has substantial expertise in these matters. This court, by contrast, would have to navigate

14

through unchartered legal waters. This Order accordingly meets
the requirements of 28 U.S.C. § 1292(b).

**CONCLUSION**

The Court **DENIES** the motion to dismiss for lack of subject
matter jurisdiction and certifies this Order for interlocutory
appeal pursuant to 28 U.S.C. § 1292(b). A party that wishes to
appeal this Order must file a petition with the Federal Circuit.
See 28 U.S.C. § 1292(d)(4)(A). The Court will defer ruling on
the Government's remaining arguments for dismissal for at least
60 days.


SO ORDERED.


                                   /s/ PATTI B. SARIS
                                   Patti B. Saris
                                   United States District Judge