**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____
                                        )
J-WAY SOUTHERN, INC.,                   )
                                        )
                    Plaintiff,          )
                                        )        Civil Action
          v.                            )        No. 19-12423-PBS
                                        )
UNITED STATES,                          )
                                        )
                    Defendant.          )
_____)


<u>**MEMORANDUM AND ORDER**</u>

February 2, 2021

Saris, D.J.

     This dispute arises out of the decision of the United
States Army Corps of Engineers to terminate its contract
with Plaintiff J-Way Southern, Inc. ("J-Way") for dredging
in Menemsha Harbor, Martha's Vineyard. J-Way brings this
action directly and as assignee of the equitable subrogation
rights of its surety U.S. Specialty Insurance ("Surety"). It
alleges that the Government improperly terminated the
contract and breached it.

     The Government moves to dismiss on the grounds that J-
Way's case is time-barred under the Contract Disputes Act
(the "CDA"), 41 U.S.C. § 7104(b), and that the assignment of
the Surety's claims to J-Way is invalid as a matter of law.
J-Way has opposed the motion.

1

After hearing, the Court **ALLOWS** the Government's motion to dismiss the amended complaint (Dkt. 52) on both grounds.

**BACKGROUND**

Except where noted, the following facts come from Plaintiffs' First Amended Complaint and Jury Trial Demand and must be taken as true at this stage. <u>See</u> <u>Newman v. Lehman Bros. Holdings Inc.</u>, 901 F.3d 19, 25 (1st Cir. 2018).

### I.   **The Contract**

Plaintiff J-Way is a Florida corporation with its principal place of business in Ohio. In June 2015, J-Way entered into a contract with the United States Army Corps of Engineers ("USACE"). The contract was for the dredging of "approximately 62,000 cy of sandy material" from Menemsha Harbor in Martha's Vineyard, Massachusetts to be disposed on Lobsterville Beach through a temporary pipeline. Dkt. 51 ¶ 12; Dkt. 51-1 at 49.

J-Way was to provide the labor, supervision, materials, and equipment necessary to complete the work. USACE agreed to pay a price per cubic yard of dredged material, plus mobilization and demobilization. The contract contained terms regarding the timing and safety of the work, as well as general terms related to federal construction contracts. The contract also referenced marine safety, in addition to other safety provisions.

The contract required the work to be completed by
January 31, 2016. J-Way did not complete the work within
that time.

## II.  **First Notice of Termination for Default**

In May 2016, USACE issued a first Notice of
Termination, finding J-Way in default.

In August 2016, J-Way filed an administrative claim
under the CDA with USACE's Contracting Officer ("CO"). J-Way
argued the delay was excusable and that the contract
deadline should be extended to the following dredging
season. The CO reviewed the claim and rescinded the default.
In September 2016, USACE and J-Way executed an Agreement to
Proceed, which modified the contract to allow J-Way to
complete the work by January 16, 2017.

## III. **Second Notice of Termination for Default**

J-Way recommenced dredging but again experienced
delays. The CO issued a Determination and Findings on March
3, 2017, stating that J-Way's failure to perform the work
was not excusable.

The CO then issued a second Notice of Termination for
Default on March 6, 2017. The Notice of Termination stated
"This notice constitutes a decision that J-Way is in default
as specified. You have the right to appeal this decision

under the Disputes clause of the contract."[1] Dkt. 51-1 at
276. J-Way's counsel responded with a letter, stating that
J-Way would "file a claim under the Contract Disputes Act
and the terms of [the contract] in short order." Dkt. 16-2;
see also Dkt. 51 ¶ 127.

USACE then made a demand upon J-Way's performance bond
to complete the work. In June 2017, USACE and the Surety
executed a Takeover Agreement. Pursuant to the Takeover
Agreement, the Surety procured a new contractor that timely
completed the work. J-Way alleges that its Surety paid for
procurement costs and other expenses to complete the
contract. USACE made its final payment to the Surety in

---

[1] The Disputes clause of the contract states:
  (a) This contract is subject to 41 U.S.C chapter 71,
  Contract Disputes.
  (b) Except as provided in 41 U.S.C chapter 71, all
  disputes arising under or relating to this contract
  shall be resolved under this clause. . . .
  (d)(1) . . . A claim by the Government against the
  Contractor shall be subject to a written decision
  by the Contracting Officer. . . .
  (f) The Contracting Officer's decision shall be
  final unless the Contractor appeals or files a suit
  as provided in 41 U.S.C chapter 71.
Disputes Clause, FAR 52.233-1 (incorporated by reference in
the parties' contract). The CDA, 41 U.S.C. chapter 71,
states the ninety-day (agency) or twelve-month (Court of
Federal Claims) time limit for appeal. 41 U.S.C. § 7104.

January 2019, at which point the Surety released all of its
claims against the United States.[2]

## IV.  **Current Proceedings**

In November 2018, the Surety brought suit against J-Way
in the United States District Court for the District of
Massachusetts. See Complaint, U.S. Specialty Ins. Co. v. J-
Way Southern, Inc., No. 18-cv-12464 (D. Mass. November 29,
2018), ECF No. 1. The Surety sought indemnity pursuant to
its contract with J-Way.[3]

In May 2019, J-Way submitted a second administrative
claim under the CDA to the CO, arguing that the March 2017
termination for default was unlawful because the delay arose
from "unforeseeable causes" such as "unusually severe
weather, unforeseeable mechanical breakdowns due to
equipment manufacturer defects, USACE's own acts and
omissions, and a previously-scheduled fishing tournament
that prevented dredging and was unknown to J-Way when it bid
on and was awarded the contracts." Dkt. 51 ¶ 4; see also

---

[2] The Court may consider both the Takeover Agreement and the
final payment estimate, Dkt. 16-5, as documents the
authenticity of which is not disputed by the parties. See
Dkt. 23 at 35-36; Alt. Energy, Inc. v. St. Paul Fire &
Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001).
[3] That case settled in June 2020. See 60 Day Settlement
Order of Dismissal and Closing Order, U.S. Specialty Ins.
Co. v. J-Way Southern, Inc., No. 18-cv-12464 (D. Mass. June
10, 2020), ECF No. 28.

Dkt. 51-1 at 3-41. The CO did not reconsider the Termination for Default and took no action on the claim.

In November 2019, J-Way brought the present action in this Court. J-Way asserted admiralty jurisdiction. The Government moved to dismiss or transfer the complaint for lack of subject matter jurisdiction, or in the alternative to dismiss the complaint for failure to state a claim.

In March 2020, J-Way submitted a third administrative claim to USACE's CO alleging that USACE breached the contract "because it (i) included defective specifications in the solicitation, (ii) failed to obtain a Right of Entry as it promised it would, and (iii) abused its discretion and acted in bad faith." Dkt. 51 ¶ 187. The CO did not respond.

In May 2020, this Court found that it had admiralty jurisdiction over the dredging contract and denied the Government's motion to dismiss for lack of subject matter jurisdiction. Because the jurisdictional issue was difficult, the Court expressly reserved decision on the Government's other arguments and stayed the case to allow for the parties to appeal the jurisdiction decision to the Federal Circuit. Neither party appealed.

In September 2020, J-Way filed an amended complaint adding the specific breach of contract allegations described in its third administrative claim. J-Way argues that the

claim has been "deemed denied" because the CO did not respond to it. Dkt. 51 ¶ 189.

## STANDARD OF REVIEW

A Rule 12(b)(6) motion is used to dismiss complaints that do not "state a claim upon which relief can be granted." See Fed. R. Civ. P. 12(b)(6). Generally speaking, to survive a Rule 12(b)(6) motion to dismiss, the factual allegations in a complaint must "possess enough heft" to state a claim to relief that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007). In evaluating the motion, the Court must accept the factual allegations in the plaintiff's complaint as true, construe reasonable inferences in the plaintiff's favor, and "determine whether the factual allegations in the plaintiff's complaint set forth a plausible claim upon which relief may be granted." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71 (1st Cir. 2014) (internal citations and quotation marks omitted). On a motion to dismiss, Courts generally may consider "only the complaint, documents attached to it, and documents expressly incorporated into it." Id. at 72. The Court may also consider documents extrinsic to the complaint if the authenticity of the document is not disputed by the parties, if the document is central to the plaintiff's claim, or if the document is

7

sufficiently referred to in the complaint. <u>Alt. Energy</u>, 267 F.3d at 33.

## **<u>LEGAL FRAMEWORK</u>**

The CDA and the Federal Acquisition Regulations ("FAR")[4] govern contracts with the federal government. Those authorities permit COs to "enter into, administer, or terminate contracts and make related determinations and findings." FAR 1.602-1; <u>see also</u> FAR 1.602-2.

A CO may terminate a government contract for default or convenience. FAR 49.102. The Government may terminate for default "because of the contractor's actual or anticipated failure to perform its contractual obligations." FAR 49.401(a). The Federal Circuit has explained that a "government decision to terminate a contractor for default is a government claim" under the CDA. <u>Malone v. United States</u>, 849 F.2d 1441, 1443 (Fed. Cir. 1988). A CO must issue a written decision on a government claim, stating the reasons for the decision and "inform[ing] the contractor of the contractor's rights as provided in" the CDA. 41 U.S.C. § 7103(d)-(e).

"The contracting officer's decision on a claim is final and conclusive and is not subject to review by any forum,

---

[4] The FAR appear in Title 48 of the Code of Federal Regulations.

8

tribunal, or Federal Government agency, unless an appeal or
action is timely commenced as authorized by [the CDA]." Id.
§ 7103(g). A contractor may appeal a CO's decision to an
agency board within 90 days of receipt, or to the Court of
Federal Claims within 12 months of receipt.[5] Id. § 7104. A
contractor may further appeal the decision of an agency
board to the Federal Circuit. Id. § 7107(a)(1)(A).
Alternatively, a CO may "reinstate the terminated contract
by amending the notice of termination" under certain
circumstances. FAR 49.401(e).

    If the Government terminates a contract for default, it
is entitled to recover the excess costs of reprocurement and
other damages. See Erin L. Toomey, Federal Government
Contracts: Overview, Practice Note, Westlaw Practical Law
Resource ID 9-599-6946. In contrast, if the Government
terminates a contract for convenience, the contractor is
entitled to recover costs plus a reasonable profit for work
performed before the termination. Id. A contractor may
convert a termination for default into a termination for
convenience by establishing that "the contractor was not in
default or that the failure to perform is excusable; i.e.,

---

[5] In the special case of maritime jurisdiction, a contractor
may appeal a CO's decision to a federal District Court
within 12 months of receipt.

arose out of causes beyond the control and without the fault or negligence of the contractor." FAR 49.401(b).

**DISCUSSION**

**I.   Time Bar**

The Government contends that J-Way's claims are time-barred for failure to timely appeal the second Termination for Default.  J-Way argues that its claim of improper termination for default is not time-barred because (1) the Government gave inadequate notice of J-Way's appeal rights and (2) J-Way reasonably and detrimentally relied by failing to appeal the termination for default decision.

*1. Adequacy of Notice*

J-Way argues it did not receive adequate notice of its appeal rights as required by 41 U.S.C. § 7013(e) because the second Notice of Termination did not include specific language provided in FAR 33.211(a)(4)(v),[6] such as the word

---

[6] "[T]he contracting officer shall . . . Prepare a written decision that shall include . . . Paragraphs substantially as follows:
'This is the final decision of the Contracting Officer. You may appeal this decision to the agency board of contract appeals. If you decide to appeal, you must, within 90 days from the date you receive this decision, mail or otherwise furnish written notice to the agency board of contract appeals . . . . Instead of appealing to the agency board of contract appeals, you may bring an action directly in the United States Court of Federal Claims (except as provided in 41 U.S.C. 7102(d), regarding Maritime Contracts) within 12 months

"final" and information on the location and timing of an appeal.

The Government denies that the second Notice of Termination was "technically defective," stating that it "gave J-Way its appeal rights using the language specified in FAR 49.402-3(g) for inclusion in a Notice of Termination for Default."[7] Dkt. 52 at 6. J-Way is correct that the notice did not provide the required regulatory language. Instead, the notice fully referenced the Disputes clause of the contract. In the Government's view, "J-Way and its

_____

of the date you receive this decision.'" FAR 33.211(a)(4)(v).

[7] "If . . . the contracting officer determines that a termination for default is proper, the contracting officer shall issue a notice of termination stating—
    (1) The contract number and date;
    (2) The acts or omissions constituting the default;
    (3) That the contractor's right to proceed further under the contract (or a specified portion of the contract) is terminated;
    (4) That the supplies or services terminated may be purchased against the contractor's account, and that the contractor will be held liable for any excess costs;
    (5) If the contracting officer has determined that the failure to perform is not excusable, that the notice of termination constitutes such decision, and that the contractor has the right to appeal such decision under the Disputes clause;
    (6) That the Government reserves all rights and remedies provided by law or under the contract, in addition to charging excess costs; and
    (7) That the notice constitutes a decision that the contractor is in default as specified and that the contractor has the right to appeal under the Disputes clause." 48 C.F.R. § 49.402-3(g).

counsel had sufficient information to be charged with understanding that the termination was an appealable Contracting Officer's decision on a Government claim, 41 U.S.C. § 7103, and that the remedy was to appeal, 41 U.S.C. § 7104." Id. at 7.

"When a CO's final decision does not afford a contractor adequate notice of appeal rights, that notice is defective and does not trigger the running of the limitations period." RMA Eng'g S.A.R.L. v. United States, 140 Fed. Cl. 191, 216 (2018) (cleaned up). However, a CO's decision "is no less final because it fail[s] to include boilerplate language usually present for the protection of the contractor." Placeway Const. Corp. v. United States, 920 F.2d 903, 907 (Fed. Cir. 1990). The question presented is thus whether the second Notice of Termination provided J-Way with adequate notice despite the omission of regulatory language.

The Court of Federal Claim's decision in RMA Engineering provides useful guidance. In that case, the Court of Federal Claims held that the plaintiff had adequate notice where:

> The Notice Of Termination states that the CO "determined that [RMA's] failure to perform is not excusable" and "constitutes a decision that [RMA] is in default as specified, and [RMA] has the right to appeal under the Disputes [C]lause." The

>Disputes Clause provides that the Contract is "subject to the Contract Disputes Act of 1978, as amended[.]"

140 Fed. Cl. at 216. (internal citations omitted)). Although the plaintiff argued that it was not familiar with the disputes process, the court held that lack of familiarity did not "excuse RMA from reading the Contract and complying with the Disputes Clause." Id. (citing Turner Constr. Co. v. United States, 367 F.3d 1319, 1321 (Fed. Cir. 2004) ("The parties [to a Government contract] are charged with knowledge of law and fact appropriate to the subject matter, and reasonable professional competence in reading and writing contracts is presumed.") (alterations in original)).

Here, the CO's second Notice of Termination stated that "[t]his notice constitutes a decision that J-Way is in default as specified" and that J-Way "ha[s] the right to appeal . . . under the Disputes clause of the contract." Dkt. 51-1 at 276. The Disputes clause states that "[t]he Contracting Officer's decision [on a claim] shall be final unless the Contractor appeals or files a suit as provided in 41 U.S.C. chapter 71." FAR 52.233-1; see also Dkt. 32-1 at 10 (incorporating by reference FAR 52.233-1).[8] The ninety-

---

[8] J-Way's sur-reply brief to the previous motion to dismiss suggested that the contract did not include the Disputes clause. Dkt. 28 at 5. The Government subsequently filed a

day or twelve-month time limit on appeal appears in 41 U.S.C. § 7104. This notice language is nearly identical to that held adequate in RMA Engineering. See 140 Fed. Cl. at 216. Thus, while the second Notice of Termination failed to comply with the requirements of FAR 33.211(a)(4)(v), the Court holds that it nevertheless provided adequate notice of J-Way's appeal rights.[9]

*2. Detrimental Reliance*

The appeals period in 41 U.S.C. § 7104 can be tolled if J-Way demonstrates that it filed a late appeal because it reasonably relied to its detriment on a defective notice of its appeal rights. Decker & Co. v. West, 76 F.3d 1573, 1579 (Fed. Cir. 1996); see also State of Fla., Dep't of Ins. v. United States, 81 F.3d 1093, 1098-99 (Fed. Cir. 1996). The Court of Federal Claims focuses on "the extent to which the deficiencies prejudiced the contractor's ability to perfect a timely appeal of the decision." See Uniglobe Gen. Trading & Contracting Co., W.L.L. v. United States, 115 Fed. Cl. 494, 515 (2014) (citing State of Fla., 81 F.3d at 1098).

---

notice, attaching the portion of the contract award, which incorporated the Disputes clause by reference. Dkt. 32-1 at 10.

[9] The Government should include the specific language provided in FAR 33.211(a)(4)(v) in future notices of termination for default. The process for appeal is as clear as the mud being dredged up from the harbor, and the regulatory language is extremely helpful.

J-Way argues it reasonably believed that the second Notice of Termination was not final, and that the proper "next step" was to file a claim requesting a "final" appealable decision. Dkt. 51 ¶¶ 117, 120-126. J-Way emphasizes that the Government rescinded the first Notice of Termination after J-Way filed a new claim. In J-Way's view, reasonableness of its reliance is a factual dispute that cannot be decided on a Rule 12(b) motion in the circumstances of this case.

The Government disagrees, arguing that as a matter of law, a termination for default constitutes a final decision on a government claim and may be immediately appealed, without the filing of a new claim by the contractor. See K & S Const. Co. v. United States, 35 Fed. Cl. 270, 276 (1996); James M. Ellett Constr. Co. v. United States, 93 F.3d 1537, 1544–45 (Fed. Cir. 1996) (noting that the Disputes clause grants contractors a right to appeal "from" a CO's determination, not back "to" the CO by submitting a new claim). It also states that "[a]n earlier reconsideration, during the [appeals] window, cannot give rise to a reasonable expectation that a subsequent appeal of another termination can be brought at any time." Dkt. 24 at 10. The notice of termination attached to the Amended Complaint states: "You are directed to demobilize from the

15

work site and any areas subject to Rights of Entry, including removal of all equipment, materials and supplies, not later than March 21, 2017. . . . By copy of this letter I am notifying your bonding company of this Termination for Default and making a claim upon the performance bond." Dkt. 51-1 at 276.

In light of this language J-Way's argument is not plausible. Plaintiff has alleged no facts that would support a reasonable belief that the Government would reconsider the second Termination for Default. Cf. Guardian Angels Med. Serv. Dogs, Inc. v. United States, 809 F.3d 1244, 1248–50 (Fed. Cir. 2016) (finding that the appeals period did not begin to run from the date of a Notice of Termination for Default where the plaintiff requested reconsideration and the CO "directed [the plaintiff] to provide documentation supporting its claim at its 'earliest convenience' and stated that she would then 'proceed with a review of the material and provide a response as required by the [FAR]'"). Instead, as alleged in the Amended Complaint, the Government ordered J-Way to demobilize all of its equipment, called in the Surety, and procured another contractor to complete the work. Despite the defects in the second Notice of Termination, the second Termination for Default was plainly final. There was no indication J-Way would get a third bite

16

at the apple.  Based on the allegations of the Amended
Complaint and its attachments, the Court concludes that J-
Way's asserted reliance on defective notice of its appeal
rights was unreasonable.

### 3. *Fulford* Doctrine

J-Way argues that its claims are timely under the
Fulford doctrine. See Fulford Mfg. Co., ASBCA No. 2143,
ASBCA No. 2144 (May 20, 1955). The Fulford doctrine allows a
contractor to challenge a Government assessment for excess
reprocurement costs by challenging the underlying
termination for default, even if a challenge to the
termination for default would otherwise be time-barred. See
MES, Inc. v. United States, 104 Fed. Cl. 620, 635 (2012).
Without citation, J-Way argues that the Fulford doctrine
allows it to challenge the Government's termination for
default decision where, as here, a surety seeks to recover
from the contractor the procurement costs the surety
incurred pursuant to a Takeover Agreement with the
Government.

The Government responds that the doctrine can only be
used to defend against a Government claim for reprocurement
costs. See Diamante Contractors, Inc., CBCA 2017, 11-1 BCA
¶ 34679 (holding that the Fulford doctrine did not apply

17

because there was no CO decision assessing reprocurement costs).

While there is little case law on point, the Court agrees with the Government that the Fulford doctrine does not apply where, as here, the Government has not made a claim for reprocurement costs or liquidated damages.

**A. Contract Claims**

J-Way tries to avoid the time limit for appealing the default termination by asserting breach of contract claims based on the same facts. Under the CDA, a contractor may submit a claim for contract damages against the government up to six years after it accrues. 41 U.S.C. § 7103(a)(4)(A).

The Government argues that J-Way's breach of contract claims effectively challenge the March 2017 Second Termination for Default, and so must also be dismissed as time-barred. See Mil. Aircraft Parts, ASBCA No. 60139, 16-1 BCA ¶ 36,390 (June 3, 2016) (declining to review breach of contract claim on the ground it was untimely because it was "based on the same set of facts, circumstances, and actions preceding the default terminations and is inextricably bound up with the issue of the propriety of those terminations").

J-Way responds that its breach of contract claims are distinguishable from its improper termination for default

claim.[10] It relies on Armour of America v. United States, where the court explained that, in the circumstances of that case, the plaintiff's "breach of contract claims present[ed] different factual and legal issues and [were] distinct and separate claims from the claim for improper default termination." See 69 Fed. Cl. 587, 590 (2006). Thus, in J-Way's view, the six-year statute of limitations applies and the breach of contract claims are timely. See 41 U.S.C. § 7103(a)(4)(A).

The court agrees that J-Way's breach of contract theories are essentially back-door challenges to the CO's decision to order the second Termination for Default. The facts involved in the breach of contract claims are the same as those in the CO's determination on the issue of excusable delay – severe weather, a fishing derby, Right of Entry ("ROE") issues, an oil sheen, and an equipment malfunction. See Dkt. 51 ¶ 131; Dkt. 51-1 at 261-72. J-Way's improper specification claim asserts that J-Way was prevented from completing the dredging on time because "USACE's specifications failed to identify that the Derby would be taking place during the same time period and in the same

---

[10] J-Way alleges three breach of contract theories: (1) improper specification, (2) abuse of discretion, and (3) breach of implied covenant of good faith and fair dealing.

location of the dredging operations" and USACE "agreed to
obtain the requisite ROEs" but failed to do so. Dkt. 51
¶¶ 152-54. That claim amounts to a challenge of the CO's
default termination decision that the fishing derby and ROE
issues did not constitute excusable delay. J-Way's abuse of
discretion claim is a straightforward challenge of the CO's
decision, asserting that the CO failed to consider required
factors. Id. ¶¶ 169-71. J-Way's good faith and fair dealing
claim is based on the alleged improper specifications and
abuse of discretion. Id. ¶ 180. J-Way's third administrative
claim thus does not demonstrate a distinction between the
factual and legal bases for its breach of contract claims
and its improper termination for default claim. See Mil.
Aircraft Parts, ASBCA No. 60139, 16-1 BCA ¶ 36390 (June 3,
2016) ("[Defendant's] affirmative claim sets forth actions
on the part of [the government] . . . that may have
constituted [contract] breaches," but "is based on the same
set of facts, circumstances, and actions preceding the
default terminations and is inextricably bound up with the
issue of the propriety of those terminations."). It does not
allow J-Way to circumvent the time bar on appeal of the
second Termination for Default. See id. As stated in
Military Aircraft Parts:

[W]e see no way to give appropriate force and effect to the CDA's express statement that a [CO's final decision] is 'final and conclusive and not subject to review' by any tribunal 'unless an appeal or action is timely commenced as authorized by this chapter,' except by declining to review contractor claims to the extent that they expressly or implicitly challenge final decisions that were not timely appealed.

Id.

## II.   **Surety's Assigned Claims**

J-Way seeks to bring counts in its own name (Counts I, III, V, and VII) as well as counts as an assignee of the equitable subrogation rights of its Surety (Counts II, IV, VI, and VIII) (the "Even Counts"). The Government argues that the Even Counts should be dismissed because by executing the Takeover Agreement, the Surety released all of its rights under the contract against the United States.[11]

Pursuant to the Takeover Agreement, the Surety released all claims against the United States after submitting its

---

[11] The Government also argues that the Surety cannot bring contractual claims as an equitable subrogee for events prior to the execution of the Takeover Agreement and that the Assignment of Claims Act bars any purported assignment of rights from the Surety to J-Way. See Fireman's Fund Ins. Co. v. Eng., 313 F.3d 1344, 1352 (Fed. Cir. 2002); 31 U.S.C. § 3727; 41 U.S.C. § 6305. J-Way contends that a surety has standing in the Court of Federal Claims as an equitable subrogee under the Tucker Act and that the Surety validly contractually assigned its claims to J-Way. See Capitol Indem. Corp. v. United States, 147 Fed. Cl. 371, 378–79 (2020). Resolution of these issues is not necessary because the Surety executed a release of all of its claims pursuant to the Takeover Agreement.

21

final pay estimate to the Government. Dkt. 16-5 at 2
("RELEASE – Contractor to Government: This contract having
been completed and finally accepted, the United States, its
Officers and Agents are hereby released from all claims and
demands whatsoever arising under or by virtue of said
contract."). The Surety therefore had no rights to assign to
J-Way.

J-Way argues that this release fails for lack of
consideration. As the Government points out, the
consideration for the release of claims is the final
payment.

J-Way also argues that Paragraphs 10 and 23 of the
Takeover Agreement conflict. Compare Dkt. 16-4 at 9
(providing that the Surety "shall directly submit the final
payment estimate to the Government and execute release of
claims"), with id. at 5 (providing "that nothing in this
Takeover Agreement shall constitute a waiver, release or
relinquishment of any rights or defenses that the Principal
or the Surety may have against the Government"). However, as
the Government points out, Paragraph 10 merely provides that
the Takeover Agreement itself is not the release of claims.
Paragraph 23 provides the terms of the government's payment
of pay estimates and requires the Surety to submit the final
pay estimate to the government and execute a release of

claims. Dkt. 16-4 at 9. The final pay estimate did include a release of claims. Dkt. 16-5 at 2.

## CONCLUSION

The Court **ALLOWS** with prejudice the Government's motion to dismiss (Dkt. 52) on the basis that J-Way's claims are time-barred and that J-Way is not a valid assignee of any claims of its Surety.

SO ORDERED.

/s/ PATTI B. SARIS
Patti B. Saris
United States District Judge